IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL REFUGEE ASSISTANCE PROJECT, INC.<br>One Battery Park Plaza, 33rd Floor<br>New York, NY 10004<br><br>      Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION<br>1300 Pennsylvania Avenue NW<br>Washington, DC 20229<br><br>      Defendant. | Case No. _____ |

**COMPLAINT**
(Freedom of Information Act)

Plaintiff, the International Refugee Assistance Project, Inc. ("IRAP"), brings this action against Defendant, U.S. Customs and Border Protection ("CBP"), to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

As further alleged below, IRAP has sought certain information from CBP regarding the Migrant Protection Protocols, also known as Remain in Mexico ("RMX"), that is directly relevant both to IRAP's mission to provide assistance and guidance to refugees, asylum seekers, and other displaced persons and to IRAP's legal representation of clients who have been enrolled in RMX. CBP has not claimed that the requested information is subject to any FOIA exceptions or privilege and has not advanced any other reason why it should not be disclosed. Indeed, CBP has provided no substantive response at all. Despite the clear statutory requirement that an agency respond to a FOIA request within 20 days, and despite IRAP's request for expedited

processing, CBP has failed to produce any documents in response to IRAP's December 2021 FOIA request ("FOIA Request" or "Request"). IRAP seeks to compel CBP to comply with its obligations under FOIA and promptly produce the requested information.

IRAP further alleges as follows:

## PARTIES

1. IRAP is a 501(c)(3) non-profit corporation incorporated under the laws of New York, and headquartered at One Battery Park Plaza, 33rd Floor in New York, NY.

2. CBP is a component of the U.S. Department of Homeland Security ("DHS") and is an agency of the United States Government under 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 551(1). CBP is headquartered at 1300 Pennsylvania Avenue NW in Washington, DC. CBP has possession, custody, and control of the documents that IRAP seeks in response to its FOIA Request.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

4. Venue is proper pursuant to 5 U.S.C. § 552(a)(4)(B).

## STATEMENT OF FACTS

### A. Background on IRAP

5. IRAP is a global legal aid and advocacy organization with a mission to create a world where refugees and all people seeking safety are empowered to claim their right to freedom of movement and a path to lasting refuge.

6. IRAP provides direct legal assistance to refugees and others seeking safety, and it works with a network of student advocates, *pro bono* partners, and supporters around the globe to deliver legal solutions for displaced people. In addition, informed by its direct services work,

IRAP engages in media and systemic policy advocacy, as well as impact litigation, to address systemic issues affecting refugees, asylum seekers, and others in need of a safe home.

7. Dissemination of information is an integral component of IRAP's mission. IRAP has published a number of policy reports to the public on issues relevant to refugees and asylum seekers, and it maintains "Know Your Rights" legal summaries and other educational materials on its websites. It generates materials for legal practitioners, which have been accessed more than 7,000 times. It routinely issues press releases and publishes a blog that covers topics relating to refugee policy. IRAP distributes a monthly newsletter to over 30,000 individuals, maintains a Facebook account with over 53,000 followers, and maintains a Twitter account with over 23,000 followers. IRAP also routinely collects and distributes resources to its network of 29 law school chapters and 75 law firm and corporate partners. Additionally, IRAP organizes and publishes documents obtained through FOIA on its website in order to make these documents publicly available and for use by advocates. *See, e.g.*, *IRAP Obtains USCIS Guidance on Humanitarian Parole Applications through FOIA Litigation*, IRAP, https://refugeerights.org/news-resources/irap-obtains-uscis-guidance-on-humanitarian-parole-applications-through-foia-litigation (last visited February 1, 2023); *IRAP Shares an Extensive Collection of Refugee Processing Documents Obtained Through FOIA*, IRAP, https://refugeerights.org/news-resources/irap-shares-an-extensive-collection-of-refugee-processing-documents-obtained-through-foia (last visited February 1, 2023).

8. To accomplish its goal of educating the public, IRAP relies on information made available by the U.S. Government, including information publicly available through FOIA.

9. To engage in its mission-driven work, IRAP uses materials such as the records sought through the FOIA Request to understand the state of the U.S. Government's policies

affecting those seeking refuge in the United States.  Access to such materials is essential to enable IRAP to engage in direct client representation, policy advocacy, and impact litigation.  As an organization committed to providing assistance to those seeking safety, IRAP requires an understanding of the governmental policies affecting refugees, asylum seekers, and other displaced people on the move.

10. As further alleged below, the information sought through the FOIA Request will be used to advance these goals and to educate the public.

11. In addition, the information sought through the FOIA Request is directly relevant to the legal representation IRAP provides to its clients who have been subjected to RMX.  In particular, the information is relevant to IRAP's mission because, as further alleged below, individuals who were enrolled in RMX continue to be impacted by the program to this day.  Accordingly, the information sought is critical to IRAP's ability to provide effective counsel to its clients.

B. **Remain in Mexico 1.0**

12. In December 2018, the Trump Administration announced RMX as a new program ("RMX 1.0").  CBP began to implement RMX 1.0 in January 2019.

13. Under RMX 1.0, approximately 70,000 asylum seekers who arrived at the U.S. Southern border and expressed fear of returning to their home countries were forced to remain in Mexico for the duration of their U.S. immigration proceedings, instead of being allowed to wait in the United States.  *See MPP (Remain in Mexico) Deportation Proceedings—All Cases,* TRAC IMMIGRATION, https://trac.syr.edu/phptools/immigration/mpp/ (last visited February 1, 2023) [hereinafter *RMXDeportation Proceedings Statistics*].

14. RMX 1.0 "impos[ed] substantial and unjustifiable human costs on migrants who were exposed to harm while waiting in Mexico."  Memorandum from Alejandro N. Mayorkas,

4

Sec'y, U.S. Dep't of Homeland Security (June 1, 2021), available at https://www.dhs.gov/sites/default/files/publications/21_0601_termination_of_mpp_program.pdf. The asylum seekers enrolled in RMX faced well-documented harms, including physical violence, sexual violence, kidnapping, theft, extortion, threats, and harm to family members. *See, e.g.*, Kathryn Hampton, et al., *Forced into Danger: Human Rights Violations Resulting from the U.S. Migrant Protection Protocols*, PHYSICIANS FOR HUMAN RIGHTS (Jan. 19, 2021), https://phr.org/our-work/resources/forced-into-danger/; *US:'Remain in Mexico' Program Harming Children: Families Seeking Asylum Exposed to Violence, Illness, Trauma*, HUMAN RIGHTS WATCH (Feb. 12, 2020), https://www.hrw.org/news/2020/02/12/us-remain-mexico-program-harming-children; Julia Neusner, et al., *Fatally Flawed, 'Remain in Mexico' Policy Should Never Be Revived*, HUMAN RIGHTS FIRST (Sept. 13, 2022), https://humanrightsfirst.org/library/fatally-flawed-remain-in-mexico-policy-should-never-be-revived/.

15.  Two and a half years after the program began, the Biden Administration issued a memorandum terminating RMX 1.0 on June 1, 2021. *See* Memorandum from Alejandro N. Mayorkas, Sec'y, U.S. Dep't of Homeland Security (June 1, 2021), available at https://www.dhs.gov/sites/default/files/publications/21_0601_termination_of_mpp_program.pdf. Pursuant to that memorandum, the Government began to promptly disenroll asylum seekers from RMX 1.0.

### C.   Remain in Mexico 2.0

16.  However, two months later, a Texas federal court enjoined the termination decision, and the Fifth Circuit affirmed the order on appeal. *See Texas v. Biden*, 554 F. Supp. 3d 818 (N.D. Tx. 2021), *aff'd*, 20 F.4th 928 (5th Cir. 2021).

17. As a result of that litigation, the Biden Administration reinstituted RMX ("RMX 2.0"), and in December 2021 new enrollments began. *See* Press Release, DHS, Justice, and State Prepare for Court-Ordered Reimplementation of MPP, https://www.dhs.gov/news/2021/12/02/dhs-justice-and-state-prepare-court-ordered-reimplementation-mpp (Dec. 12, 2021).

18. RMX 2.0 policies, procedures, and related documents are the documents IRAP seeks in the FOIA Request.

19. Ultimately, the U.S. Supreme Court reversed the Fifth Circuit's decision, resulting in the August 2022 vacatur of the district court's permanent injunction of the Biden Administration's RMX termination. *See Biden v. Texas*, 142 S. Ct. 2528, 2548 (2022); *see* Order, *Texas v. Biden*, No. 2:21-cv-00067 (N.D. Tx. Aug. 8, 2022), ECF No. 147.

20. Thereafter, the Biden Administration stopped new enrollments into RMX 2.0 in August 2022.

21. Between December 2021 and August 2022, approximately 10,000 asylum seekers were enrolled in RMX 2.0. *See RMX Deportation Proceedings Statistics*, *supra*.

22. For individuals who were already enrolled in RMX 2.0, the Biden Administration slowly unwound the program, forcing most asylum seekers to wait in Mexico until the date of their next scheduled immigration court appearance. *See Court Ordered Reimplementation of the Migrant Protection Protocols*, DEPARTMENT OF HOMELAND SECURITY (August 8, 2022), https://www.dhs.gov/archive/migrant-protection-protocols.

23. RMX 2.0 remained operational well into Fall 2022, and additional asylum seekers were ordered removed while they were forced to remain in Mexico.

24. Of the individuals enrolled in RMX 2.0, an estimated 2.4 percent were granted asylum, compared with 50 percent of individuals who were allowed to enter the United States during the pendency of their immigration court proceedings. *See* Uriel J. Garcia, *"Thanks, and God bless you": Asylum-seekers allowed to enter U.S. after "remain in Mexico" ends*, TEXAS TRIBUNE (Aug. 26, 2022, 5:00 AM), https://www.texastribune.org/2022/08/26/texas-migrants-asylum-mpp-remain-in-mexico-ends/.

**D.    The Ongoing Impact of Remain in Mexico**

25. Nearly 40,000 asylum seekers have been ordered removed under RMX. *See RMX Deportation Proceedings Statistics*, *supra*.

26. RMX 2.0 policies related to the status of RMX removal orders continue to impact individuals when they subsequently enter the United States.

27. Meanwhile, in the Texas district court case challenging the Biden Administration's termination of RMX, last month the district court granted the plaintiffs' motion to stay the effective date of the Biden Administration's second RMX termination memorandum. *See* Order, *Texas v. Biden*, No. 2:21-cv-00067 (N.D. Tx. Dec. 15, 2022), ECF No. 178.

28. Given the ongoing litigation in the North District of Texas, there remains a possibility that RMX will be reinstated and more asylum seekers will be forced to return to Mexico in grave danger.

**F.    IRAP's December 21, 2021 FOIA Request**

29. On December 21, 2021, IRAP submitted the FOIA Request to CBP via the online portal at FOIAOnline.gov. The Request was assigned identification number CBP-2022-026376, and is attached hereto as Exhibit A.

30. The FOIA Request sought policies, procedures, guidance, memoranda, and other similar documents regarding the re-implementation of RMX starting in December 2021, including documents describing exemptions from RMX.

31. The Request further sought expedited processing under established procedures, citing the great risk to their lives and physical safety that asylum seekers faced as a result of RMX and explaining that the records would assist IRAP and other service providers to provide accurate information to asylum seekers in assessing their options for safety as they exercised their right to claim asylum.

32. Pursuant to FOIA, within 20 business days of receipt of the FOIA Request — that is, no later than January 21, 2022 — CBP was required to "determine . . . whether to comply with such request" and "immediately notify" IRAP of "such determination and the reasons therefor." *See* 5 U.S.C. § 552(a)(6).

33. It has been more than a year since IRAP submitted its FOIA Request, and CBP has yet to provide any substantive response to the Request. CBP has responded only to provide IRAP the number assigned to it, and to inform IRAP—on January 20, 2023—that its request for expedited processing was denied and its request for a fee waiver was not applicable. *See* Exhibits B, C. Not only has CBP not provided IRAP with the requested documents, but it also has failed to provide any indication as to when IRAP should expect a response.

34. CBP has therefore failed to make a final determination on the FOIA Request within the time limits prescribed by FOIA. 5 U.S.C. § 552(a)(6)(A)(i).

## **COUNT I**

35. IRAP incorporates each of the foregoing paragraphs of this Complaint.

36. Pursuant to FOIA, 5 U.S.C. § 552(a), IRAP has a statutory right to access requested agency records.

37. CBP has failed to respond to the FOIA Request within the time limits set forth by FOIA, 5 U.S.C. § 552(a)(6)(A)(i).

38. CBP has failed to conduct a reasonable search for records responsive to the Request.

39. CBP has failed to properly respond to the Request, as required by 5 U.S.C. § 552(a)(6)(A)(i).

## PRAYER FOR RELIEF

WHEREFORE, IRAP respectfully requests that this Court enter a judgment for IRAP and award the following relief:

a. Order CBP, by a date certain, to conduct a search that is reasonably likely to lead to the discovery of any and all records responsive to the FOIA Request;

b. Order CBP, by a date certain, to demonstrate that it has conducted an adequate search;

c. Order CBP, by a date certain, to produce to IRAP any and all non-exempt records or portions of records responsive to the FOIA Request, as well as a *Vaughn* index of any records or portions of records withheld due to a claim of exemption;

d. Enjoin CBP from withholding the requested records;

e. Award IRAP its costs and attorneys' fees reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

f. Grant IRAP such other and further relief as the Court may deem just and proper.

February 2, 2023

Respectfully submitted,

*/s/ Brooke U. Stanley*

Nooree Lee (D.C. Bar No. 1001687)
R. Gregory Rubio (D.C. Bar No. 989878; application for admission to this court pending)
Brooke Stanley (D.C. Bar No. 1612821)
Emma Merrill-Grubb (D.C. Bar No. 90000722; application for admission to this court pending)
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, D.C. 20001

ATTORNEYS FOR PLAINTIFF