UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL REFUGEE ASSISTANCE PROJECT, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 23-0304 (AHA) |
| U.S. CUSTOMS AND BORDER PROTECTION, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**

**TABLE OF CONTENTS**

Table of Contents ..... i

Table of Authorities ..... ii

Background ..... 1

I. Plaintiff's FOIA Request and CBP's Search Methodology ..... 1

II. Records Release, Withholdings, and Narrowing of Issues ..... 2

Legal Standards ..... 3

Argument ..... 4

I. CBP Conducted an Adequate Search for Potentially Responsive Records. ..... 4

II. CBP Properly Withheld Material Under FOIA Exemptions 5 and 7(E). ..... 6

A. Exemption 5 Protects the Internal Deliberations Redacted from CBP's Records Release. ..... 6

B. CBP Properly Withheld Records Pursuant to Exemption 7(E). ..... 10

III. CBP Has Released All Reasonably Segregable, Non-Exempt Material ..... 12

Conclusion ..... 14

## TABLE OF AUTHORITIES

**Cases**

*Abramson v. FBI*, 456 U.S. 615 (1982) .......... 11

*Access Reps. v. Dep't of Justice*, 926 F.2d 1192 (D.C. Cir. 1991) .......... 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 3

*Armstrong v. Exec. Off. of the President*, 97 F.3d 575 (D.C. Cir. 1996) .......... 12

*Blackwell v. FBI*, 646 F.3d 37 (D.C. Cir. 2011) .......... 10

*Blanton v. Dep't of Just.*, 63 F. Supp. 2d 35 (D.D.C. 1999) .......... 10

*Cause of Action Inst. v. U.S. Dep't of Com.*, 513 F. Supp. 3d 116 (D.D.C. 2021) .......... 8

*Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, 746 F.3d 1082 (D.C. Cir. 2014) .......... 3

*CREW v. Dep't of Labor*, 478 F. Supp. 2d 77 (D.D.C. 2007) .......... 4

*Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83 (D.D.C. 2009) .......... 3

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001) .......... 7

*Dep't of Just. v. Tax Analysts*, 492 U.S. 136 (1989) .......... 3

*Dep't of State v. Ray*, 502 U.S. 164 (1991) .......... 3

*Dillon v. Dep't of Just.*, 444 F. Supp. 3d 67 (D.D.C. 2020) .......... 5

*EPA v. Mink*, 410 U.S. 73 (1973) .......... 7

*Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381 (D.C. Cir. 1979) .......... 4

*Jennings v. Dep't of Just.*, 230 F. App'x 1 (D.C. Cir. 2007) .......... 4

*Jud. Watch, Inc. v. FBI*, Civ. No. 00-745, 2001 WL 35612541 (D.D.C. Apr. 20, 2001) .......... 10

*Judicial Watch, Inc. v. Dep't of State*, 306 F. Supp. 3d 97 (D.D.C. 2018) .......... 6

*Keys v. Dep't of Just.*, 830 F. 2d 337 (D.C. Cir. 1987) .......... 10

*Kowal v. Dep't of Justice*, 107 F.4th 1018 (D.C. Cir. 2024) ..... 5

*Larson v. Dep't of State*, 565 F.3d 857 (D.C. Cir. 2009) ..... 4

*Looks Filmproduktionen GmBH v. CIA*, 199 F. Supp. 3d 153 (D.D.C. 2016) ..... 5

*Loving v. Dep't of Def.*, 550 F.3d 32 (D.C. Cir. 2008) ..... 3

*Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020) ..... 7

*Nat'l Pub. Radio, Inc. v. U.S. Dep't of Homeland Sec.*, Civ. A. No. 20-2468 (RCL), 2022 WL 4534730 (D.D.C. Sept. 28, 2022) ..... 9

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ..... 7

*Oglesby v. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) ..... 5

*Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429 (D.C. Cir. 1992) ..... 7

*Pinson v. Dep't of Just.*, Civ. A. No. 12-1872, 2016 WL 29245 (D.D.C. Jan. 4, 2016) ..... 4

*Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982) ..... 10

*Quinon v. FBI*, 86 F.3d 1222 (D.C. Cir. 1996) ..... 11

*Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021) ..... 8

*Scott v. Harris*, 550 U.S. 372 (2007) ..... 3

*Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496 (D.D.C. 1997) ..... 10

*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106 (D.C. Cir. 2007) ..... 12

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021) ..... 6

*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999) ..... 4

*Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975) ..... 8

*Weisberg v. Dep't of Just.*, 627 F.2d 365 (D.C. Cir. 1980) ..... 4

*Wolf v. CIA*, 569 F. Supp. 2d 1 (D.D.C. 2008) ..... 6

**Statutes**

5 U.S.C. § 552(a) ........ 3, 4

5 U.S.C. § 552(b) ........ 6, 10, 12

**Rules**

Fed. R. Civ. P. 56 ........ 3

Defendant U.S. Customs and Border Protection ("CBP") respectfully moves for summary judgment in its favor under Federal Rule of Civil Procedure ("Rule") 56 in this Freedom of Information Act ("FOIA") matter. As support for its Motion, Defendant states as follows:

## BACKGROUND

### I. Plaintiff's FOIA Request and CBP's Search Methodology.

Plaintiff submitted the Freedom of Information Act ("FOIA") request at issue to the CBP on December 21, 2021, seeking "[p]olicies, procedures, guidance, memoranda, and other similar documents regarding the re-implementation of Migrant Protection Protocols (MPP) starting in December 2021, including documents describing exemptions from MPP." Declaration of Patrick Howard ("Howard Decl.") ¶ 6; Def.'s Stmt. of Material Facts Not in Genuine Dispute ("Def.'s Stmt.") ¶ 1. To identify and collect potentially responsive records, CBP consulted with "subject matter experts most knowledgeable of the re-implementation of MPP" regarding the scope of the search. Howard Decl. ¶ 7. "CBP's Office of Field Operations (OFO) and U.S. Border Patrol (USBP) conducted the search," as these sub-entities were the relevant operational offices who operationalized the court-ordered reimplementation of MPP" and were therefore "most likely to have the requested documents concerning the reimplementation." *Id.*; Def.'s Stmt. ¶ 3.

Within the Office of Field Operations, custodians in the "sub-office . . . who worked directly on MPP reimplementation[] searched for potentially responsive records using broad key words such as 'Migrant Protection Protocols' and 'MPP' within the relevant timeframe." *Id.* ¶ 8. The search "was conducted in the office's respective shared drives and shared folders, intranet pages, email inboxes, and the physical office space where any paper files would have been stored in desk drawers, file cabinets, and removable media." *Id.* The searched locations "are where all policy-related documents for this sub-office within the Office of Field Operations are housed." *Id.*

At U.S. Border Patrol, "the search was tasked out to each Sector, and each Sector determined whether it was appropriate to further task [the search] down to the station level." *Id.* ¶ 9. The individuals who conducted the search "in the Sectors were those who had served as coordinators for the court-ordered reimplementation of MPP [or] served as policy and compliance points of contact." *Id.* The custodians also used "broad key words such as 'Migrant Protection Protocols' and 'MPP'" to search "email inboxes, any MPP-specific electronic folders, shared supervisor folders, shared folders concerning processing documents, and other shared folders reasonably likely to contain information on this program, as well as any additional folders related to other requests for MPP-related information." *Id.*

## II. Records Release, Withholdings, and Narrowing of Issues

As detailed in the *Vaughn* index submitted herewith, CBP released 35 documents (435 pages) in full or with partial redactions and withheld 16 documents (119 pages) in full. *See* Ex. A; *see also* Howard Decl. ¶ 31. CBP relied on Exemptions 5, 6, 7(C), and 7(E) to justify its withholdings in this matter, as set forth on a document-by-document basis in the *Vaughn* index. Ex. A.

As set forth in the parties' March 7, 2025 Joint Status Report, Plaintiff does not intend to challenge documents withheld to protect the names, contact information, or identifying information of "individuals or offices" or the redactions to "titles of any electronic law enforcement systems." Jt. Status Rep. ¶ 6, ECF No. 26 (Mar. 7, 2025). On April 4, 2025, Plaintiff further informed Defendant that it is *not* challenging any withholdings in six documents.[1] Based

[1] The six documents not at issue are: (a) "The Reimplementation of the Migrant Protection Protocols," Ex. A at 1; (b) "Court Ordered Reimplementation of the Migrant Protection Protocols," Ex. A at 1; (c) "MPP Workflow," Ex. A at 5–6; (d) "Processing MPP Returns in [Law Enforcements Systems]", Ex. A at 7; (e) December Documents – 2023 – 11 November El Centro Final – Redacted, "FW: Updated Tear Sheets," Ex. A at 23–24; and (f) "Reimplementation of the Migrant Protection Protocols: Vaccination Plan," Ex. A at 39–40.

on these statements, the remaining withholdings subject to challenge in the remaining documents those relying on: (1) Exemption 5, and (2) Exemption 7(E), except with respect to the titles of any electronic law enforcement systems.

**LEGAL STANDARDS**

FOIA was enacted "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Accordingly, FOIA "directs that 'each agency, upon any request for records . . . shall make the records promptly available to any person' unless the requested records fall within one of the statute's nine exemptions." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(a)(3)(a)). "The agency bears the burden of establishing that a claimed exemption applies[,]" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014), and exemptions are "given a narrow compass[,]" *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

To prevail on summary judgment, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir.

1980) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). A court "may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). An agency's justification for withholding records "is sufficient if it appears 'logical' or 'plausible.'" *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Wolf v. CIA*, 473 F.3d 370, 375 (D.C. Cir. 2007)); *Pinson v. Dep't of Just.*, Civ. A. No. 12-1872, 2016 WL 29245, at *10 (D.D.C. Jan. 4, 2016). Review is *de novo*, 5 U.S.C. § 552(a)(4)(B), but a reviewing court should "respect the expertise of an agency" and not "overstep the proper limits of the judicial role in FOIA review[,]" *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1388 (D.C. Cir. 1979).

## ARGUMENT

### I. <u>CBP Conducted an Adequate Search for Potentially Responsive Records.</u>

The Court should grant summary judgment in CBP's favor because, as demonstrated by the Howard Declaration, the agency conducted an adequate search for potentially responsive records. "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Jennings v. Dep't of Just.*, 230 F. App'x 1, 1 (D.C. Cir. 2007) (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (cleaned up). The agency must show that it "conduct[ed] a good faith, reasonable search of those systems of records

likely to possess the requested records." *Pinson*, 177 F. Supp. 3d at 80 (quoting *Marino*, 993 F. Supp. 2d at 9 (internal citation omitted)). To make this showing, an agency must submit a "reasonably detailed" affidavit setting forth the search terms and the type of search performed. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The burden then "shifts to the FOIA requester to produce countervailing evidence suggesting that a genuine dispute of material fact exists as to the adequacy of the search." *Dillon v. Dep't of Just.*, 444 F. Supp. 3d 67, 89 (D.D.C. 2020) (internal quotations omitted). "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

"Agencies have the discretion to construe requests reasonably and conduct flexible and targeted searches within their internal records systems. Agencies do not need to honor unreasonably burdensome requests, boiling the ocean in search of responsive records." *Kowal v. Dep't of Just.*, 107 F.4th 1018, 1028 (D.C. Cir. 2024). Here, Plaintiff's request sought policies, guidance, and similar documents regarding the court-ordered reimplementation of the Migrant Protection Protocols. Compl., Ex. A. To locate potentially responsive records, CBP tasked "subject matter experts" within the U.S. Border Patrol and CBP's Office of Field Operations, who were "directly involved in implementing," had "served as coordinators of," or were policy and compliance points of contacts for, the reimplementation Migrant Protection Protocols, to conduct the search. Howard Decl. ¶¶ 6–8. *See, e.g.*, *Looks Filmproduktionen GmBH v. CIA*, 199 F. Supp. 3d 153, 168 (D.D.C. 2016) (search parameters generated in consultation with subject matter experts was adequate). These custodians used the broadest possible search terms, including "Migrant Protection Protocols" and "MPP," to cast a wide net in identifying records that may be responsive to Plaintiff's request. *See id.* ¶¶ 7–9. The custodians' search included both electronic

files and physical locations for potentially responsive documents. *See* Howard Decl. ¶¶ 8–9. CBP has therefore provided sufficient description of the search conducted in this matter, which shows that it was reasonably calculated to locate records responsive to Plaintiff's request. *Wolf v. CIA*, 569 F. Supp. 2d 1, 7 (D.D.C. 2008) ("The law of this Circuit does not demand that 'the affidavits of the responding agency set forth with meticulous documentation the details of an epic search for the requested records. Rather[,] . . . affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance.'" (quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982))). Given these efforts, the Court should find that CBP conducted an adequate search for records as required by the FOIA.

## II. CBP Properly Withheld Material Under FOIA Exemptions 5 and 7(E).

### A. Exemption 5 Protects the Internal Deliberations Redacted from CBP's Records Release.

FOIA Exemption 5 allows agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As a general matter, intra-agency communications are those between employees within a single executive branch agency, and inter-agency communications are between employees of different agencies or departments. *Jud. Watch, Inc. v. Dep't of State*, 306 F. Supp. 3d 97, 109 (D.D.C. 2018) (also discussing intra-agency consultant corollary). One well-recognized civil discovery privilege that permits agencies to withhold records under Exemption 5 is the deliberative process privilege. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 783 (2021). The deliberative process privilege shields from disclosure "documents reflecting advisory opinions, recommendations and deliberations

comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 150 (1975).

The object of the deliberative process privilege is to enhance the "quality of agency decisions" by "protecting open and frank discussion among those who make [decisions] within Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (quoting *Sears*, 421 U.S. at 151). This privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Klamath*, 532 U.S. at 9; *Sierra Club*, 141 S. Ct. at 785 (noting the privilege encourages candor among agency officials and "blunts the chilling effect that accompanies the prospect of disclosure."); *EPA v. Mink*, 410 U.S. 73, 87 (1973) (explaining that Government decision making would be greatly hampered if agencies were "prematurely forced to 'operate in a fishbowl.'") (referencing S. Rep. No. 813, at 9 (1965)).

To properly assert the deliberative process privilege under Exemption 5, the Agency must show that the contested intra or inter-agency records are both "'predecisional' and 'deliberative.'" *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). To show that a document is predecisional, the agency does not need to identify a specific final decision on the subject, if one exists at all, but should explain the role the contested document played in the deliberative process. *Access Reps. v. Dep't of Just.*, 926 F.2d 1192, 1196 (D.C. Cir. 1991); *see Sears*, 421 U.S. at 151 n.18 (noting that not all recommendations will ripen into agency decisions). "A document is predecisional if it was 'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made." *Petro. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). And deliberative records are those "prepared to help the agency formulate its

position," *Sierra Club,* 141 S. Ct. at 786, by implicating the "consultative process" including communications which reflect the "type of back-and-forth exchange of ideas, constructive feedback, and internal debate over how best to promote and to preserve" the agency's proposed policies. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 364 (D.C. Cir. 2021). The "key to whether a document is deliberative is whether it is part of the 'give-and-take' of the 'consultative process.'" *Id.* (quoting *Machado*, 971 F.3d at 370); *see Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975) (stating that documents part of the deliberative process make recommendations or express opinions on legal or policy matters). Defendant's redactions here meet these standards.

Relying on Exemption 5, CBP withheld or redacted: a draft Powerpoint presentation that provides a "workflow for CBP officers regarding the use of an internal CBP system," a "planning document "describ[ing] how CBP will process individuals" in accordance with Centers for Disease Control social distancing guidance; "draft document[s] that include[] comprehensive guidance" regarding "various proposed immigration processing pathways for noncitizens who are encountered in a specific Border Patrol Sector;" and documents discussing potential amenability criteria under consideration. *Vaughn* Index (submitted as Ex. A) at 1, 3, 14–19, 22, 39–41 (detailing CBP's Exemption 5 redactions).

Consistent with D.C. Circuit precedent, the protected documents described in the *Vaughn* index are all intra- or inter-agency documents and are therefore eligible for protection under Exemption 5. *See Cause of Action Inst. v. Dep't of Com*., 513 F. Supp. 3d 116, 125 (D.D.C. 2021). Second, the redacted material consists of internal discussions of CBP's measures taken to re-implement the Migrant Protection Protocols, including proposals for processing migrants encountered at specific Border Patrol sectors, proposals for ensuring migrants are processed in

accordance applicable social distancing requirements, and internal discussion of potential amenability criteria being considered by the agency. *See, e.g.*, Ex. A at 1, 16, 22. Thus, the records themselves clearly do not reflect final agency actions but instead are predecisional discussions on the identified topics. *See Nat'l Pub. Radio, Inc. v. Dep't of Homeland Sec*., Civ. A. No. 20-2468 (RCL), 2022 WL 4534730, at *4 (D.D.C. Sept. 28, 2022) (finding disputed records predecisional where they were created to make findings and recommendations to shape agency policy and were non-final). Finally, the records reflect an internal collaborative process that was "part of the 'give and take'" geared toward "help[ing] the agency formulate its position" on the topic of discussion. *Reps. Comm.*, 3 F.4th at 364; *Sierra Club*, 141 S. Ct. at 786; *Grumman Aircraft*, 421 U.S. at 184 (noting materials protected by the privilege are "predecisional memoranda prepared in order to assist an agency decisionmaker in arriving at his decision[.]").

CBP's declaration and *Vaughn* also demonstrate foreseeable harm should the withheld deliberative information be released. The withheld material comprises records containing internal discussion of the manner in which CBP may re-implement the Migrant Protection Protocol. Howard Decl. ¶ 11. The drafts "played an important role in the decision-making process" and would, if disclosed, "reveal the development process through which CBP employees helped reach a decision." *Id.* ¶ 12. Disclosure of these internal deliberations would "impede agency actions on the very subjects [the records] discuss" thus "chilling internal agency decision making processes." *Id.* ¶ 11. Given the detailed description of the withheld material as set forth in the *Vaughn*, and the agency's explanation of the risks posed by the disclosure of these materials, *see Emuwa v. DHS*, 113 F.4th 1009, 1015 (D.C. Cir. 2024) (agency's explanation of foreseeable harm that would occur if deliberative material was released was sufficient), the Court should therefore find that CBP properly applied Exemption 5 to these internal deliberative documents.

**B. CBP Properly Withheld Records Pursuant to Exemption 7(E).**

The Court should uphold CBP's Exemption 7(E) withholdings. A record is compiled for law enforcement purposes if: (1) the activity that gives rise to the documents is related to the enforcement of federal laws or the maintenance of national security; and (2) the nexus between the activity and one of the agency's law enforcement duties is based on information sufficient to support at least a "colorable claim" of its rationality. *See Keys v. Dep't of Just.*, 830 F. 2d 337, 340 (D.C. Cir. 1987); *Pratt v. Webste*r, 673 F.2d 408, 420–21 (D.C. Cir. 1982); *Blanton v. Dep't of Just.*, 63 F. Supp. 2d 35, 44 (D.D.C. 1999). The D.C. Circuit has opined that a law-enforcement agency need only show that the nexus between the activity in question and its law-enforcement duties "must be based on information sufficient to support at least 'a colorable claim' of its rationality." *Keys*, 830 F.2d at 340 (quoting *Pratt*, 673 F.2d at 421).

Exemption 7(E) allows an agency to withhold information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7). It affords "categorical protection," *Jud. Watch, Inc. v. FBI*, Civ. No. 00-745, 2001 WL 35612541, at *8 (D.D.C. Apr. 20, 2001) (internal quotation marks omitted), to material that "would compromise law enforcement by revealing information about investigatory techniques that are not widely known to the general public," *Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997). The bar is "relatively low . . . for the agency to justify withholding" information under Exemption 7(E). *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).

The Howard Declaration explains that CBP applied Exemption 7(E) "to records that provide a workflow for CBP Officers regarding the use of an internal CBP system, including screenshots of the law enforcement system, for noncitizens who are enrolled in" the Migrant

Protection Protocol and detailed "instructions" for the use of this system, Howard Decl. ¶ 23; a "diagram" that details the "specific timing" for migrants' "court intake and returns from court" and "specific locations at which these events occur . . . on CBP property," including "photographs[], diagrams . . . and capacity" of areas of the CBP facility, id. ¶ 24; "guidelines for the number of [Migrant Protection Protocols] enrollees" a particular CBP sector "was authorized to enroll" to comply with social distancing rules," *id.*; "information regarding various impacts that deliberations with a sovereign nation may have operationally on how CBP may reimplement" the Migrant Protection Protocol, *id.* ¶ 27; "entities that may perform certain law enforcement functions in connection with a Standard Operating Procedure," *id.* ¶ 28; information "concerning law enforcement methods and practices, such as actions for law enforcement to take and the basis for taking such actions," including "specific information considered to determine the appropriate course of action" under the Migrant Protection Protocols, *id.* ¶ 29; and information regarding "immigration processing pathways for individuals who are encountered in a given Border Patrol Sector," *id.* ¶ 30; *see also Vaughn* index (detailing material withheld under Exemption 7(E)). The Howard Declaration therefore provides a detailed description of each withheld record that demonstrates its nexus with CBP's law enforcement functions. *See Abramson v. FBI*, 456 U.S. 615, 622 (1982); *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996); *Keys*, 830 F.2d at 340 (quoting *Pratt*, 673 F.2d at 421).

None of the information CBP withheld under Exemption 7(E) is publicly available. *See* Howard Declaration ¶¶ 23–24, 27–30. And as the Howard Declaration explains, disclosure of the withheld information would permit bad actors "to access the internal CBP law enforcement system[s]" or obtain a "roadmap of how to navigate" the system[s] without authorization; *id.* ¶ 23, reveal information as to the level of CBP staffing in specific areas at CBP facilities, *id.* ¶¶ 24, 28;

and permit "individuals to alter their patterns of conduct" or "adopt countermeasures to circumvent the migrant inspection process," *id.* ¶¶ 27, 29, 30. Disclosure of this information could therefore be reasonably expected to enable circumvention of the law, hinder CBP's ability to pursue its law enforcement mission, and, with respect to specific law enforcement systems, if breached, "result[] in alteration, loss, damage, or destruction of data contained in [law enforcement] system[s]." *Id.* ¶¶ 23–24, 27–30. CBP's invocation of Exemption 7(E) to protect this non-public information is, therefore, appropriate and should be upheld.

## III. <u>CBP Has Released All Reasonably Segregable, Non-Exempt Material.</u>

If a record contains information exempt from disclosure, FOIA requires any "reasonably segregable," non-exempt information to be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b). To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1114 (D.C. Cir. 2007).

Here, CBP reviewed 1374 pages of potentially responsive information, and after that review, released 435 pages in full or in part and withheld 119 pages in full, as detailed in the *Vaughn* index. *See* Howard Decl. ¶¶ 31–32; Def.'s Stmt. ¶ 3. After a line-by-line review, CBP determined the withheld information is "so intertwined with protected material that segregation is not possible or its release would have revealed the underlying protected material." Howard Decl. ¶ 32. The Howard Declaration and detailed *Vaughn* index demonstrate that CBP has fulfilled its obligation to segregate exempt from non-exempt material and release as much exempt material as

possible to Plaintiff. The Court should, therefore, grant summary judgment in CBP's favor on its segregability obligations.

* * *

**CONCLUSION**

For the reasons discussed above, Defendant respectfully requests that the Court its Motion for Summary Judgment and enter judgment in its favor on all of Plaintiff's claims. A proposed order is submitted with this Motion.

Dated: April 11, 2025

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

By: *_/s/ Tabitha Bartholomew_*
TABITHA BARTHOLOMEW
D.C. Bar No. 1044448
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
Tel: 202-252-2529
Tabitha.Bartholomew@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL REFUGEE ASSISTANCE PROJECT, INC., Plaintiff, v. U.S. CUSTOMS AND BORDER PROTECTION, Defendant. | Civil Action No. 23-0304 (AHA) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's motion for summary judgment, the parties' briefs, and the entire record herein, it is hereby

ORDERED that Defendant's Motion is GRANTED; and it is further

ORDERED that summary judgment is entered in favor of Defendant.

SO ORDERED.

_______________
Date

_______________
AMIR H. ALI
United States District Judge